ROCKLAND ELECTRIC COMPANY, PROSECUTOR, v. THE
BOROUGH OF MONTVALE, RESPONDENT.

Argued January 18, 1928—Decided May 2, 1928.

Before Justices KALISCH and KATZENBACH.

For the prosecutor, *Robert Carey* and *Harry Lane*.

For the respondent, *Mackay & Mackay*.

The opinion of the court was delivered by

KATZENBACH, J. This case is before this court upon a
writ of *certiorari*. The writ brings up for review an ordi-
nance of the borough of Montvale, in the county of Bergen,
passed by the borough council at a meeting held on No-
vember 10th, 1927.

The title and body of the ordinance are as follows:

"An ordinance to regulate the erection, construction, main-
taining and extending of appliances used for electric cur-
rent and other commodities within the borough of Mont-
vale, and to provide a penalty therefor.

Be it ordained by the mayor and council of the borough of Montvale:

1. That hereafter it shall be unlawful for any person, firm or corporation to erect, construct, maintain or extend within the limits of the borough of Montvale, any poles, pipes, wires and accessories over and along any of the highways or any part of the borough of Montvale without first obtaining permission from the mayor and council so to do.

2. Said permission shall be granted only upon written application made therefor to the borough clerk, who shall submit the same to the mayor and council at a regular meeting for their approval, and if the mayor and council by resolution approve the said application, they shall thereupon authorize the clerk by resolution to issue a permit. Said permit shall be granted only upon the applicant agreeing to abide by all future ordinances, rules or regulations of the mayor and council.

3. No permit shall be granted to any person, firm or corporation, for the installing, erecting or maintaining of electric wires above the surface of the ground having a voltage of more than two thousand five hundred [2,500] volts.

4. Any person, firm or corporation violating any of the provisions of this ordinance shall be subject to a fine of not less than fifty dollars [$50] nor more than two hundred dollars [$200], in the discretion of the magistrate or other officer before whom such person, firm or corporation is convicted.

This ordinance shall take effect when passed and published as required by law.

Dated October 13, 1927.             A. R. MURRAY,
                                              *Mayor.*"

Before considering the reasons advanced by the prosecutor for its attack upon the legality of the ordinance, the situation of the prosecutor and borough as it existed at the time of the passage of said ordinance by the borough council on November 10th, 1927, should be stated. The prosecutor, Rockland Electric Company, is a corporation of this state

engaged in the furnishing of electric light, heat and power. It operates principally in Bergen county. Within the field of its operations is located the borough of Montvale. Among its corporate powers, rights and franchises are those conferred upon it by chapter 189 of the laws of 1896. *Pamph. L.* 1896, *p.* 322; 3 *Comp. Stat., p.* 3152. These are as follows:

"Any corporation organized or to be organized by virtue of the act entitled "An act concerning corporations," for the purpose of constructing, maintaining and operating works for the supply and distribution of electricity for electric lights, heat or power, shall have full power to use the public roads or highway, streets, avenues and alleys in this state for the purpose of erecting posts or poles on the same to sustain the necessary wires and fixtures, upon first obtaining the consent in writing of the owners of the soil; provided, however, no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the street in which the same shall be placed and the manner of placing the same, and that the same shall be so located as in no way to interfere with the safety or convenience of persons traveling on or over the said roads and highways, and that the public streets in any of the incorporated cities and towns of this state shall be subject to such regulations as may be first imposed by the corporate authorities of such cities and towns."

Whether the borough of Montvale is within the provision of the above quoted act as a city or town need not be considered for both the prosecutor and the borough in the year 1909 acted as if a designation of streets in Montvale in which the poles, &c., of the prosecutor should be placed was necessary. In November, 1909, the prosecutor petitioned the borough for permission to erect, construct and maintain pole lines and appurtenances for the purpose of transmitting electricity within the borough. This petition resulted in the passage of an ordinance in January, 1910, which gave the prosecutor the right to erect poles, pipes, wires and accessories in, on, over and along the highways and public

places of Montvale, necessary for conducting and distributing electricity, and designating all the streets for such purpose. The ordinance contained certain regulations as to the location of poles, &c., which have no bearing upon the present case. There was also embodied in the ordinance an option to the borough for the purchase of the prosecutor's property.

Under this ordinance the prosecutor invested capital in the erection of its poles, wires and appurtenances. Its business has increased with the increased demand for electric current and the growth of the population. This necessitated the conveying of current of higher voltage over its lines to meet the requirements of its customers. The prosecutor is obliged by law to furnish, as a public utility, adequate service to its customers for electric light, heat and power. The board of public utility commissioners has the power and is under the duty to see that adequate service is furnished to the consumers of the prosecutor. If the ordinance under review is legal and the prosecutor cannot carry on its poles current of a voltage over two thousand five hundred volts, then .it cannot give the service which the law demands, unless permission is given by the borough of Montvale to place conduits beneath the surface of the streets into which the wires for the conveyance of current shall be placed. This appears to be the indirect purpose of the ordinance. Montvale has a population of twelve hundred. The cost of an underground conduit system would be large. If placed in one municipality other municipalities would for aesthetic reasons probably ask for like consideration. Such a course would result in the necessity of ·higher rates for the prosecutor. An application to the utility board for higher rates would result in opposition from the consumers. Litigation would be commenced which is frequently ruinous to a utility and always to be deplored from any aspect of the case. It is for these reasons important that the ordinance under review should be examined with great care.

The ordinance of 1927 in its first section makes it unlawful for the prosecutor to maintain or extend its poles, pipes, wires and accessories over and along any of the highways of the borough without first obtaining permission from

the mayor and council. It impliedly repeals so far as the prosecutor is concerned the provisions of the ordinance of January 3d, 1910, to which reference has been made. This the law inhibits. In the case of *Hudson Telephone Co.* v. *Jersey City*, 49 *N. J. L.* 303, Mr. Justice Reed said:

"I am of the opinion that as a general rule, a designation of streets by a city gives the company an irrevocable right to use the street so designated for the purposes indicated in the statute. Certainly, after the expenditure of moneys in the erection of poles, made in reliance upon the municipal designation, the company obtains a vested right of which they cannot be stripped by a subsequent revocation of such designation."

To the same effect is the case of *Phillipsburg Electric Co.* v. *Phillipsburg*, 66 *N. J. L.* 505. Where a corporation has acted in reliance upon a permission to use the highways granted by the governing body of a municipality, by expending money in the erection of the appliances necessary for the carrying out of its corporate purposes, the rights and franchises given by the municipality cannot be impaired or taken away and the corporation left to the mercy of the municipal authorities. This proposition is sufficiently supported by the cases cited. The first section of the ordinance under review and the second section which deals with the requirements to be taken by those applying for permission and the conditions imposed are illegal and void so far as the prosecutor is concerned.

The third section of the ordinance which prohibits the granting of any permit to carry above the surface of the ground electric wires carrying a voltage of more than two thousand five hundred volts is also attacked by the prosecutor. The respondent claims this provision is a proper exercise of the police power by the borough. The prosecutor contends that the provision is unreasonable, and for that reason this section of the ordinance is illegal and void.

The testimony taken and included in the record is conclusive that the prosecutor to meet the requirements of its business must carry through its wires in Montvale a current of at least four thousand volts. The testimony shows that

in the city of Englewood, which has a population of at least ten times the size of Montvale, electric wires carrying currents of twenty-six thousand volts are placed above ground. Transmission lines above ground carrying from one hundred and ten thousand to one hundred and thirty thousand volts are in use in highways by the public service company. The expert for the respondent admitted it is more economical to carry electric current above ground, and that there could be a dangerous condition created if the wires were placed underground, as for example the hitting of a cable by a workman while using a pick or tool. The same expert also admitted that a current of five hundred volts was considered dangerous, that under certain conditions a wire carrying one hundred and ten volts might become very dangerous, and that from a practical standpoint two thousand five hundred volts is as dangerous as twelve thousand volts. Transmission lines are under the supervision and control of the public utility commission and the work upon them is done in conformity to the board's rules. From the evidence submitted we gather that the protection to the users of the highways against accidents occurring by shocks of electricity is in the method adopted for the installation of· the wires and the precautions taken to guard the wires when installed. The public, as users of the highway, are protected in the case of the overhead wires of the prosecutor both by the provisions contained in the January, 1910, ordinance and the supervision and control of the utility board. There is nothing in the testimony which shows that the two thousand five hundred volts fixed in the ordinance as the line of demarcation between safe and dangerous electric currents has any basis upon which to rest. It is arbitrary, as danger can come from a current of one hundred and ten or five hundred volts as readily as from a current in excess of two thousand five hundred volts. This section of the ordinance we deem unreasonable. It cannot, aside from other considerations, be sustained as a reasonable exercise of the police power.

The fourth section of the ordinance deals with the penalty to be imposed for its violation.

The ordinance as a whole, so far as the prosecutor is concerned, is illegal and void, and is set aside with costs to the prosecutor.